NOLAN *v.* NOLAN

5-3855                                401 S. W. 2d 13

Opinion delivered April 4, 1966

*W. H. Arnold, Switzer & Griffin,* for appellant.

*Travis Mathis,* for appellee.

GEORGE ROSE SMITH, Justice. We have for review a divorce decree which nominally awarded custody of the parties' nineteen-month-old son to the appellee, the father, but which seems actually to have vested the right of custody in the child's paternal grandparents.

The parents, Louis and Betty Ann Nolan, were married on February 1, 1963. Louis was then twenty-one years old; Betty Ann was seventeen. Their son Mitchell was born November 25, 1963. The couple separated in June of 1965. Two months later the court granted a divorce to Louis and fixed the custody of the child.

The decree awards custody to the child's father "for so long as he keeps said child in the home of Mr.

and Mrs. C. C. Nolan [the appellee's parents]." The mother is given reasonable visitation privileges, but neither parent is to remove the child from the elder Nolans' home without their express consent. Louis Nolan, the child's father, is directed to pay his parents $100 a month for the child's support. It is apparent that the practical effect of the decree is to place the child in the custody of his paternal grandparents. This is especially true in view of the further fact that Louis Nolan expects to be employed by an Oklahoma construction company and to be away from his parents' home at least during the day, if not during many nights as well.

We treat the decree as an award of custody to the grandparents. We have frequently held that, as between a mother and grandparents, the mother is entitled to her child unless she is unfit to be entrusted with the child's care. Many of our cases were reviewed in *Parks* v. *Crowley,* 221 Ark. 340, 253 S. W. 2d 561 (1952), and need not be cited again in this case.

It is not shown by the proof that Betty Ann Nolan is not a proper person to bring up her little son. She was only eighteen years old when the responsibilities of motherhood became hers. There is testimony that she proved to be a poor housekeeper, that she liked to sleep until ten or eleven in the morning, and that she did not change her child's diapers as promptly as she should have done. Her husband testified that he suspected her of having had dates with other men after their marriage, but his suspicion is wholly unsupported by proof and is flatly denied by Betty Ann herself. When we consider the record as a whole, even with due regard for the trial judge's superior opportunity to weigh the testimony, we are unwilling to say that Betty Ann should be denied the precious privilege of caring for her own child merely because of shortcomings that involve no immorality and that are understandable in a mother so young as she. The controlling considerations are the welfare and best interest of the infant son. We are convinced that those ends will best be served by confiding the child to his mother's devoted care.

Reversed.

McFADDIN, J. dissents.

ED. F. McFADDIN, Justice, dissenting. It is almost impossible to tell what is best to be done in a case like this one. Here is a little boy who was twenty months old at the time of the hearing. Neither parent is blameless. There is no need to recount the testimony. We see only the printed page. The Chancellor saw these parties and heard them testify; and he made a decision which he thought was the best thing for the little boy. I want to follow his superior information in this case; and so I would affirm the Chancellor's findings.

It must be borne in mind that I dissented in *Nutt* v. *Nutt*, 214 Ark. 24, 214 S. W. 2d 366; and I dissented in *Parks* v. *Crowley*, 221 Ark. 340, 253 S. W. 2d 561. In the latter case I used this language:

"The Chancellor saw the parties and heard the testimony. He concluded that the little girl would be better cared for if left with the grandparents. We have only the cold print before us, and I am unwilling to reverse his findings."

My views have not changed. An earnest, conscientious Chancellor saw the parties and heard the testimony. He reached a conclusion which I think is entitled to more weight than any conclusion we could reach from the printed page. I would leave his findings undisturbed.